UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LADANTE CARLOS McNEARY,

            Plaintiff,                            Hon. Janet T. Neff

v.                                          Case No. 1:20-cv-1

PORTAGE PUBLIC SAFETY
DEPARTMENT, et al.,

            Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff LaDante Carlos McNeary has sued Defendants Officers N. Mattson and E. Vesey of the Portage Public Safety Department pursuant to 42 U.S.C. § 1983 alleging that they used excessive force on him in violation of the Fourth Amendment during an arrest on August 14, 2019 in the parking lot of a Meijer store in Portage, Michigan. Defendants have filed a Motion for Summary Judgment and/or to Compel and to Extend Dates. (ECF No. 25.) McNeary has failed to respond within the time permitted by Western District of Michigan Local Civil Rule 7.2(c). Generally, where the non-moving party fails to respond to a motion for summary judgment, "the district court must, at a minimum, examine the moving party's motion for summary judgment to ensure that it has discharged its initial burden." *Miller v. Shore Fin. Servs., Inc.*, 141 F. App'x 417, 419 (6th Cir. 2005) (citing *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998)). Pursuant to 28 U.S.C. § 636(b)(1)(B), and having conducted the required review, I recommend that Defendants' Motion for Summary Judgment be **GRANTED**.

## I.  Background

On August 14, 2019, Plaintiff was present with other individuals in a Meijer superstore in Portage, Michigan, when he became a suspect in a retail fraud incident. Meijer Loss Prevention Officer Pamela Alexander saw Plaintiff leave the liquor department with a backpack and heard bottles clinking inside the backpack. At the time, Alexander was on the phone with a detective regarding another theft that had just occurred and mentioned to the detective that Plaintiff had just taken some liquor. Plaintiff overheard Alexander's comment and took off running at the back of the store, along with a female companion. Alexander saw them run out of the store and exited behind them, noticing Plaintiff discard his backpack. (ECF No. 26-2 at PageID.141.)

Around the time Plaintiff and his companion exited the building, Defendant Mattson arrived at the store to investigate the prior retail fraud. Shortly after he parked his patrol vehicle toward the north entrance of the store, he observed Plaintiff and his companion—a white female in a floral dress—running through the parking lot. (ECF No. 26-3; ECF No. 26-5 at PageID.152.) Defendant Mattson believed that the individuals had committed retail fraud and attempted to follow them but lost them in the parking lot. He returned to his patrol vehicle and drove around the parking lot looking for them. He radioed for assistance, and Defendant Vesey responded to the scene shortly thereafter. (*Id.*; ECF No. 26-3.)

Defendant Mattson eventually parked his vehicle and began checking vehicles to see if he could locate the suspects. As he approached a white Malibu, he saw the white female in the floral dress inside the vehicle in the back seat on the driver's side. (ECF No. 26-5 at PageID.152.) He approached the Malibu and ordered the female to show her hands, and she complied. Defendant Mattson then walked around to the rear passenger door, opened it and saw Plaintiff. Defendant Mattson ordered Plaintiff to show his hands. Initially, Plaintiff hesitated but eventually complied. (*Id.*)

Defendant Mattson informed Plaintiff that was investigating retail fraud. Plaintiff became hostile toward Defendant Mattson and insisted that he had done nothing wrong. Plaintiff continued to argue with Defendant Mattson, stating that he was only sitting in the car and had not run from the store. By this time, Defendant Vesey had arrived at the scene and was questioning the female companion. Defendant Mattson called Ms. Alexander over to the vehicle, and she showed them a backpack with liquor in it and said that it belonged to Plaintiff. (*Id.* at PageID.153, 161.) Defendant Mattson then told Plaintiff that he was under arrest for retail fraud and ordered him out of the vehicle. (*Id.* at PageID.153.) Plaintiff initially stated that he would not exit the vehicle and argued with Defendant Mattson that he had done nothing wrong, but eventually complied and was handcuffed with his hands behind his back. (*Id.*)

As Defendant Mattson walked Plaintiff toward his patrol vehicle, Plaintiff continued to insist that he had done nothing wrong and asked why he was being arrested. When Defendant Mattson opened the door of his patrol vehicle to place Plaintiff inside, Plaintiff spun away and attempted to break free. However, Defendant Mattson maintained control and attempted to push Plaintiff inside the vehicle, ordering him multiple times to get inside. Although Defendant Mattson pushed Plaintiff inside the vehicle, his feet were still outside. Plaintiff, resisting Defendant Mattson's efforts, maintained a rigid posture and attempted to stand and get out of the vehicle. Defendant pinned Plaintiff to the door jamb as he waited for backup officers to arrive, but Plaintiff again tried to escape. Defendant Vesey left the Malibu and went to the other side of the patrol vehicle and attempted to pull Plaintiff inside, but Plaintiff continued to kick and thrash about. Defendant Mattson tried to bend Plaintiff's legs so that he could close the door, but Plaintiff resisted. Defendant Mattson then attempted two knee strikes to Plaintiff's left thigh and multiple close fist strikes that were ineffective in getting Plaintiff to bend his legs. (*Id.*) At one point

3

Defendant Mattson was able to get Plaintiff's feet just inside the door, but Plaintiff kicked them out and struck Defendant Mattson in his hands, forearms, and torso.

After struggling with Plaintiff for several minutes, Defendant Vesey removed his taser, and Defendant Mattson warned Plaintiff that he would be tased if he did not place his feet inside the vehicle. Defendant Mattson counted to three, but Plaintiff did not comply, so Defendant Vesey deployed his taser in drive-stun mode in Plaintiff's upper back and shoulder area. Upon being tased, Plaintiff bent his legs, and Defendant Mattson closed the driver's side door. Defendant Mattson then went to the other side of the vehicle to assist Defendant Vesey in closing the other door. However, Plaintiff used the closed door as leverage to push his head and shoulders against the door, preventing Defendants from closing it. Officer Schumacher then arrived on the scene and assisted Defendants in pushing the door closed. (*Id.* at PageID.154, 162–63.)

Following the incident, Plaintiff was taken to the Kalamazoo County jail. On September 20, 2019, Plaintiff pled guilty to malicious destruction of police property; assaulting, resisting, or obstructing a police officer; and habitual offender third offense. (ECF 26-8 at PageID.183–84.)

## II.  Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

4

### III.   Discussion

Defendants offer several grounds for dismissal of Plaintiff's claims on the merits, including that they are entitled to qualified immunity and the claims are barred by the doctrines of *Heck v. Humphrey*, 512 U.S. 477 (1994), collateral estoppel, and judicial estoppel. Defendants further argue that Plaintiff's claims should be dismissed for failure to prosecute and on the basis of Plaintiff's repeated discovery violations. Because Defendants have presented unrebutted evidence, including video evidence clearly demonstrating that Plaintiff physically resisted Defendants' efforts to place him in the patrol vehicle, dismissal on the merits is proper.

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The analysis entails a two-step inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these steps in any order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if either step of the

analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016). In this case, the Court need only address the first step of the analysis.

An excessive force claim must be analyzed under the Fourth Amendment's standard of objective reasonableness. *Graham v. Connor*, 490 U.S. 386, 395–96 (1989). This standard must be applied in light of the reality that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Id.* at 397. Thus, "the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. In determining whether an officer's actions were reasonable, the court must examine the specific facts of the case. *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001). Factors that bear on the issue are: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect is cooperating or is actively resisting arrest or attempting to flee. *Id.* The test is "fact specific, not mechanical[.]" *Wysong v. City of Heath*, 260 F. App'x 848, 854 (6th Cir. 2008).

Application of the pertinent factors demonstrates that no reasonable jury could conclude that Defendants used excessive force on Plaintiff. Although retail fraud is not a violent crime, the issue here is that, after the arrest, Plaintiff refused to get into Defendant Mattson's patrol vehicle and actively fought Defendant Mattson's efforts to place him in the vehicle.

Plaintiff is seen and heard on the video refusing to sit in the vehicle and keeping his legs straight to prevent the door from closing. For several minutes, Defendant Mattson exhausted every reasonable tool at his disposal to get Plaintiff into the vehicle, but Plaintiff refused to comply. By the time Defendant Vesey arrived at the patrol vehicle and unsuccessfully tried to pull Plaintiff into the vehicle, use of a Taser to gain Plaintiff's compliance was one of the few remaining options

that remained. The Sixth Circuit has observed that "[a]ctive resistance to an officer's command can legitimize an officer's use of a Taser," *Goodwin v. City of Painesville*, 781 F.3d 314, 323 (6th Cir. 2015) (citing *Hagans v. Franklin Cty. Sheriff's Office*, 695 F.3d 505, 509 (6th Cir. 2012)), and that "[s]uch resistance can take the form of 'verbal hostility' or 'a deliberate act of defiance.'" *Id.* (quoting *Eldridge v. City of Warren*, 533 F. App'x 529, 534–35 (6th Cir. 2013)). Active resistance generally arises "where the suspect causes the officers to be exposed to volatility, hostility, and danger in a way that increases with the passage of time, thus justifying (and often requiring) the use of force." *Eldridge*, 533 F. App'x at 535 (citing *Lawrence v. Bloomfield Twp.*, 313 F. App'x 743 (6th Cir. 2008)). Here, Defendant Vesey's use of a taser on Plaintiff one time in drive-stun mode for a few seconds was reasonable and did not inflict any appreciable injury on Plaintiff, yet served to gain sufficient compliance to allow Defendants to close the door.

Because Plaintiff cannot demonstrate the violation of a constitutional right, there is no need to address the second step of the qualified immunity analysis. In his amended complaint, Plaintiff alleged that after he was transferred to the Kalamazoo County jail, he was denied medical attention. (ECF No. 8 at PageID.22.) Even accepting Plaintiff's unsupported allegation as true, he does not allege that either Defendant denied him medical care and, because he has failed to respond to the instant motion, he has presented no admissible evidence on this allegation. Accordingly, assuming that Plaintiff intended to assert a separate claim against Defendants for denial of medical care, such claim should be dismissed with prejudice as well.

Accordingly, I recommend that the Court grant summary judgment on all claims.

## IV.  Conclusion

For the reasons set forth above, I recommend that the Court **grant** Defendants' motion for summary judgment (ECF No. 25) and dismiss Plaintiff's amended complaint with prejudice. I

further recommend that the Court include in its judgment Plaintiff's obligation to pay Defendants

$395.20 in costs previously imposed in ECF No. 23.

Dated: March 23, 2021                                   /s/ Sally J. Berens
                                                        SALLY J. BERENS
                                                        U.S. Magistrate Judge

## **NOTICE TO PARTIES**

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court

within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file

objections within the specified time waives the right to appeal the District Court's order. *See*

*Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).